IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

ANITRA HIGHTOWER,      )
       )
    Plaintiff,     )
       )
   vs.      )      4:16-CV-2039-LSC
       )
NANCY A. BERRYHILL,    )
Acting Commissioner of    )
Social Security,     )
       )
    Defendant.    )

**MEMORANDUM OF OPINION**

## I.    Introduction

The plaintiff, Anitra Hightower, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Ms. Hightower timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Hightower was thirty-eight years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she attended school through the twelfth grade, although she did not graduate. (Tr. at 42, 205.) Her past work experiences

include employment as a hair stylist, fast food employee, and store manager. (Tr. at 21, 34-36, 191.) Ms. Hightower claims that she became disabled on September 27, 2012, due to migraines, anxiety, shortness of breath, and degenerative joint disease in both knees. (Tr. at 37-41, 178, 204.) During the hearing, Ms. Hightower also alleged problems with depression and sleep apnea. (Tr. at 37-41).

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational

requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's

impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ first found that Ms. Hightower met the insured status requirements of the Social Security Act through September 30, 2015. (Tr. at 13.) She found that Ms. Hightower has not engaged in SGA since the alleged onset date. (*Id.*) According to the ALJ, Plaintiff's osteoarthritis of the bilateral knees, migraine headaches, obstructive sleep apnea, morbid obesity, generalized anxiety disorder, depressive disorder and somatic symptom disorder are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, the ALJ found that these impairments in combination neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 14.)

The ALJ determined that Ms. Hightower has the RFC to perform sedentary work with the following limitations: she cannot have concentrated exposure to extreme temperatures or exposure to hazards; she can only occasionally stoop, kneel, crouch, or crawl; she can understand, remember, and carry out simple instructions and attend to those for two-hour periods; she should have limited and casual contact with the general public; and changes to her work environment should be infrequent and introduced gradually. (Tr. at 16.) The ALJ next determined that Plaintiff could not perform her past relevant work. (Tr. at 21.) She noted that she was a "younger individual age 18-44," had a "limited education" and could communicate in English, as those terms are defined in the regulations. (*Id.*) The ALJ then determined that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, including general office clerk, inspector/sorter, and production and table worker. (Tr. at 21-22, 55-57.) The ALJ concluded her findings by stating that Ms. Hightower "was not under a 'disability,' as defined in the Social Security Act," at any time through the date of her decision. (Tr. at 21-23.)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there

is substantial evidence in the record as a whole to support the findings of the

Commissioner, and (2) whether the correct legal standards were applied. *See Stone*

*v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v.*

*Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  This Court gives

deference to the factual findings of the Commissioner, provided those findings are

supported by substantial evidence, but applies close scrutiny to the legal

conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute

its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210

(11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir.

2004)).  "The substantial evidence standard permits administrative decision

makers to act with considerable latitude, and 'the possibility of drawing two

inconsistent conclusions from the evidence does not prevent an administrative

agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*,

793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed.*

*Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the

proof preponderates against the Commissioner's decision, it must affirm if the

decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin*

*v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

Ms. Hightower argues that the Commissioner's decision should be reversed for one reason: the ALJ did not adequately consider her obesity in combination with her other impairments and, when her obesity is properly taken into consideration, her medical condition is essentially "equivalent in severity to a listed impairment."[1]

Where a claimant has multiple impairments, the ALJ considers the combined effect of all impairments without regard to whether any individual impairment would demonstrate disability. 20 C.F.R. § 404.1523. At step three of the sequential

---

[1] Additionally, Plaintiff's brief devotes one sentence each to referencing her low full-scale IQ score, depression, and migraines, and the potential effects of these conditions on absenteeism and her ability to adapt to jobs, but fails to develop any argument on these issues. The issues before this Court are deemed limited to those issues properly raised and supported by either party. *Outlaw v. Barnhart*, 197 F. App'sx 825, 826 n.3 (11th Cir. 2006) (citing *Cheffer v. Reno*, 55 F.3d 1517, 1519 n.1 (11th Cir. 1995)); *see also N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").

process, the ALJ determines whether a claimant has "impairment(s)" that meets one of the listed disabilities. *Id*. § 404.1520(a)(4)(iii). The regulations state that, where no individual impairment meets a listing, the ALJ will consider whether a combination of impairments is medically equivalent to a listing. *Id*. § 404.1526; *see also Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002).

Here, the ALJ found at step three of the sequential process that Plaintiff did not have "an impairment or a combination of impairments" that met or medically equaled a listed impairment, further stating that she considered such combined effects of Plaintiff's alleged impairments both "singly and in combination." (Tr. at 14.) In *Wilson*, the ALJ acknowledged that Wilson suffered multiple impairments and then stated that he "did not have an impairment or combination of impairments" that equaled a listing. 284 F.3d at 1224. The Eleventh Circuit held that statement was sufficient to demonstrate that the ALJ considered the cumulative effect of the claimant's impairments. *Id*. at 1224–25; *see also Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (reaching the same conclusion based on similar language). The ALJ went even farther here, specifically considering whether Plaintiff met listings for osteoarthritis of the knees (Listing 1.02), sleep apnea (Listing 3.10), and migraines (Listing 11.03). (Tr. at 14-15.)

Substantial evidence supports the ALJ's assessment that Plaintiff did not meet or medically equal a listing, as well as her RFC determination. Plaintiff contends that the ALJ did not properly consider the effects of her obesity. Although Social Security Ruling 02-1p, cited by Plaintiff, provides that the effects of a claimant's obesity along with the claimant's other impairments "may" be a factor in the "meets" and "equals" conclusion at step three of the sequential process, Plaintiff fails to demonstrate that her obesity precludes her from working with limitations. In any event, the ALJ specifically noted that she considered Plaintiff's morbid obesity in connection with her other impairments as required by SSR 12-2p. (Tr. at 14.) *See also Lewis v. Comm'r of Soc. Sec.*, 487 F. App'x 481, 483 (11th Cir. 2012) (holding ALJ complied with SSR 02-1p where ALJ considered evidence of claimant's obesity and found obesity was a severe impairment and claimant could perform light work); *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263-64 (11th Cir. 2009) (holding ALJ properly considered claimant's obesity where ALJ referenced SSR 02-1p and found obesity was a severe impairment, but did not result in any specific functional limitations).

Moreover, Plaintiff fails to note that the mere diagnosis of obesity, a claimant's weight, or any other condition does not automatically establish work-related limitations. *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005); *see*

*also Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) ("a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work") (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). As the Eleventh Circuit has stated, "Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself." *Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005).

The record, as discussed by the ALJ, provides substantial evidence that Plaintiff's obesity, taken in combination with her other impairments, did not prevent her from performing the range of sedentary work in her RFC. Plaintiff's osteoarthritis of her knees has been treated with prescription medication with minimal changes since 2010. (Tr. at 17-18, 273-313.) Over the next several years of treatment, Plaintiff repeatedly reported that she could carry out her daily activities. (Tr. at 17, 269-271, 283.) Even in September 2012, the month of Plaintiff's alleged onset of disability, Plaintiff denied any "severe exacerbation of knee pain." (Tr. at 17, 262.) When Plaintiff presented to V. Snehaprabha Reddy, M.D., for a disability examination on September 26, 2013, Dr. Reddy noted that while Plaintiff could not walk on her heels or toes and that there was some limitation with flexion in her

knees, leading to a diagnosis of osteoarthritis of both knees, there was no specific limitation on Plaintiff's ability work. (Tr. at 17, 322-323.) From September 2013 through June 2014, Plaintiff reported being able to carry out her activities of daily living. (Tr. at 18, 188, 347-353.) Given that Plaintiff's knee pain was managed with medication and that there were no severe exacerbations of knee pain, no limitations were placed on her ability to perform work. (Tr. at 341.) In fact, the ALJ specifically noted in her decision that Plaintiff's obesity "likely contributes to her pain, [but] there is no substantial evidence that [her] obesity precludes her from work at the sedentary level of exertion." (Tr. at 20). The ALJ also specifically found that Plaintiff's "physical examinations are basically normal and no treating or examining physician has placed any restrictions on the claimant due to her obesity but has only recommended that she reduce her weight." (Tr.at 20, 244-320, 322-325, 340-359, 361-368).

The ALJ also considered Plaintiff's migraine headaches. Plaintiff asserted multiple times since the onset of worsening, daily headaches in April 2012 that she was still able to carry out her activities of daily living. (Tr. at 269.) The medications prescribed to control her headache pain, including Topamax, managed her pain effectively enough that Plaintiff reported she had not experienced a migraine since starting Topamax. (Tr. at 18, 257.) Even Plaintiff's claims of worsening headaches

in September 2013 were counteracted by the fact that Plaintiff admitted to Dr. Reddy that her headaches were eliminated within three hours when she took her medication. (Tr. at 18, 322.) For these reasons, Dr. Reddy diagnosed Plaintiff with migraines but did not place any limitations on her ability to work. (Tr. at 322, 323.) From December 2013 through June 2014, Plaintiff had not reported any symptoms of headache pain and has been able to carry out her daily activities. (Tr. at 18, 341-353.)

The ALJ also considered Plaintiff's sleep apnea. After a sleep study in October 2013, Plaintiff was diagnosed with obstructive sleep apnea that required a CPAP machine, but Plaintiff did not complain of symptoms related to her sleep apnea when she returned for follow ups in December 2013, January 2014, February 2014, and June 2014. (Tr. at 19, 327-338, 341-353.) The ALJ correctly concluded that this condition was not severe and did not preclude Plaintiff from performing work at the sedentary level. (Tr. at 19.) For instance, Plaintiff was only instructed not to drive when drowsy, to elevate her head in bed, and reduce her weight. (Tr. at 341.)

Finally, the ALJ considered Plaintiff's alleged anxiety, depression, and somatic symptom disorder. The record indicated no more than mild to moderate limitations from these impairments. (Tr. at 14-16, 19.) Plaintiff's reported history

of depression stops in 2012, with only one complaint of depression in September 2013 and no complaints in 2014. (Tr. at 20, 341, 347, 350, 353.) Plaintiff reported that her anxiety was well-controlled with prescription medication from 2012 through 2014. (Tr. at 19-20, 254-256, 257-271.) Dr. Reddy's evaluation in September 2013 yielded a diagnosis of anxiety or depression, but no limitations were placed on her ability to work. (Tr. at 322-325.) Similarly, when Plaintiff saw Dr. Rogers, Ph.D., for a psychological evaluation in February 2015, Dr. Rogers diagnosed her with somatic symptom disorder with predominate pain, unspecified depressive disorder, and anxiety disorder, but noted that it was Plaintiff's physical impairments (as opposed to her psychiatric complaints) that appeared to be the major obstacle to employment. (Tr. at 361-368.) The ALJ determined that these findings were consistent with the record and gave great weight to these findings, adjusting her RFC determination accordingly. (Tr. at 16.) Dr. Rogers also diagnosed Plaintiff with mild intellectual disability based on WAIS testing, estimating that Plaintiff had only moderate limitations in her intellectual ability. The ALJ considered this diagnosis, but afforded it less weight since Plaintiff is less limited, as evidenced by her history of performing skilled work. (Tr. at 21.)

In conclusion, Plaintiff failed to prove that her obesity, taken in combination with her other impairments, should have led the ALJ to find that she equaled a Listing.

## IV.   Conclusion

Upon review of the administrative record, and considering all of Ms. Hightower's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON FEBRUARY 20, 2018.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704